# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOSE T. VASQUEZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 18 C 3137 |
| | ) |
| WILL COUNTY SHERIFF'S OFFICE, | ) |
| COUNTY OF WILL, ILLINOIS, | ) |
| and JOHN DOE, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Over the course of more than a decade, Jose Vasquez was wrongfully arrested numerous times based on an electronic warrant that erroneously listed his social security number instead of that of the actual suspect. The Will County Sheriff's Office generated and administered this electronic warrant. Vasquez has sued the Sheriff's Office and Will County, Illinois under 42 U.S.C. § 1983 and *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). He alleges that the Sheriff's conscious decision not to adopt a policy to review and ensure the accuracy of its electronic warrants violated his rights under the Fourth and Fourteenth Amendments of the U.S. Constitution and caused his wrongful arrests. Vasquez also asserts several state-law tort claims.

The defendants have moved for summary judgment on all of Vasquez's claims. For the reasons stated below, the Court grants summary judgment for the defendants

on one of Vasquez's *Monell* claims but denies the motion on the remaining claims.

**Background**

Vasquez has the same name and birth date as a suspect in a 1979 murder that took place in Joliet, Illinois. Vasquez lives in the Washington, D.C. area, has never been to Illinois, and he is not a suspect in the Joliet murder case.

In June 2005, the Will County Sheriff's Office loaded a failure-to-appear warrant for a suspect in the 1979 Joliet murder into Illinois's criminal information database, the Law Enforcement Agencies Data System (LEADS). This warrant erroneously listed Vasquez's social security number rather than that of the murder suspect. The Will County Sheriff's Office is the agency that enters all warrants issued in Will County into the LEADS system, and it is responsible for editing and deleting those warrants as necessary. When a warrant is loaded into LEADS, it also appears in the federal criminal database, the National Crime Information Center (NCIC). Consequently, LEADS warrants are available to law enforcement agencies throughout the country.

In August 2005, police in Prince George's County, Maryland detained Vasquez based on the Will County warrant with his social security number. The Prince George's County police then contacted the Will County Sheriff's Office seeking confirmation that the warrant was still active. The Will County Sheriff's Office confirmed that the warrant was active. The Sheriff's Office also contacted the Joliet Police seeking photos and fingerprints of the suspect to forward to Prince George's County for identification verification. The warrants division supervisor at the Sheriff's Office testified that he also requested photos and fingerprints of the Prince George's County detainee—Vasquez— to determine if the right person had been detained in Maryland. After the photo

2

exchange confirmed that Vasquez was not the suspect associated with the 1979 Joliet murder, the Prince George's County police released him.

Despite this, the Will County Sheriff's Office did not modify the erroneous warrant with Vasquez's social security number for a number of years, waiting until September 2017 to delete the warrant. In the meantime, Vasquez was arrested numerous times based on the same warrant. According to the warrant division supervisor in the Sheriff's Office, as of March 2017, Vasquez had been arrested "nine times in the last ten years." Rojek Dep., Ex. F. to Defs.' L.R. 56.1 Stmt., dkt. no. 75-7, at 78:7–79:8. In the eight-month period from July 2016 and March 2017 alone, Vasquez was arrested four times based on the erroneous warrant. Vasquez testified that one of these arrests caused him to miss shifts at work and ultimately lose his job. During the most recent arrest, in March 2017, a U.S. Secret Service officer injured Vasquez's neck, shoulder, knee, and hand to such an extent that he required ambulance transport and hospitalization.

In September 2017, the Will County Sheriff's Office deleted the warrant with Vasquez's social security number from LEADS.

## Discussion

The defendants have moved for summary judgment on all of Vasquez's claims.[1] Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a summary judgment motion, the Court views the evidence in the light most

---

[1] Counts 7 and 8 are claims against unnamed "John Doe" defendants. Discovery has closed, the deadline for amending the pleadings and adding parties has expired, and Vasquez has not moved to substitute named defendants on these claims. The Court therefore dismisses these claims with prejudice.

3

favorable to the nonmoving party and draws all reasonable inferences in his favor. *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017).

**A.      *Monell* claims**

Vasquez asserts two *Monell* claims.  In the first (count 1), he alleges that the County and Sheriff's Office violated his Fourth Amendment right to be free from unreasonable seizure.  In the second (count 2), Vasquez alleges that the defendants deprived him of his liberty without due process of law, in violation of his Fourteenth Amendment rights.  He claims that the following actions or inaction by the Will County Sheriff's Office caused these constitutional injuries: loading warrants with erroneous information into LEADS, failing to review its LEADS warrants to ensure accuracy, and ignoring significant errors in those warrants.

The defendants have moved for summary judgment on both *Monell* claims.  First, the defendants argue (correctly) that because Vasquez's Fourteenth Amendment claim is based on injuries that amounted to wrongful pretrial detentions, the Fourth Amendment—not the Fourteenth Amendment—governs this claim.[2]  *See Lewis v. City of Chicago*, 914 F.3d 472, 475 (7th Cir. 2019).  Vasquez concedes this point.  The defendants are entitled to summary judgment on count 2.

Next, the defendants argue that they are entitled to summary judgment on Vasquez's Fourth Amendment *Monell* claim because Vasquez has not identified

---

[2]  Although Vasquez did not specify in his complaint whether he was alleging a violation of his substantive or procedural due process rights, this Court construes count 2 as a procedural due process claim.  *See Jewett v. Anders*, 521 F.3d 818, 827 n.9 (7th Cir. 2008) (explaining that a claim that an unlawful arrest violated a section 1983 plaintiff's due process rights under Fourteenth Amendment is properly understood as a procedural due process claim)*.*

4

evidence that would permit a reasonable jury to find in his favor on any of the three elements of these claims: (1) existence of an official unconstitutional policy, (2) deliberate indifference to a known or obvious risk that the policy would lead to constitutional violations, and (3) direct causation linking the official policy to the plaintiff's injuries. *J.K.J. v. Polk County*, 928 F.3d 576, 587–88 (7th Cir. 2019). The Court will address the sufficiency of the evidence on each of these elements in turn.

The purpose of first requirement for establishing *Monell* liability—an official unconstitutional policy—is to "distinguish acts of the *municipality* from acts of the *employees* of the municipality," thereby ensuring that "municipal liability is limited to action for which the municipality is actually responsible." *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008). There are several ways a plaintiff can demonstrate that an unconstitutional policy exists, one of which is by showing that there was a widespread government practice or implicit policy at work. *Glisson v. Ind. Dep't of Corrs.*, 849 F.3d 372, 379 (7th Cir. 2019) (en banc); *see also J.K.J.*, 928 F.3d at 587–88. A plaintiff can also meet the official policy requirement by demonstrating that a municipality decided not to adopt a policy despite an obvious risk of constitutional harm in the absence of such a policy. *Glisson*, 849 F.3d at 379–81.

The defendants argue that Vasquez has not offered evidence that would permit a reasonable jury to find a widespread unconstitutional practice at the Will County Sheriff's Office, because he has cited only to a single error in a single warrant that affected a single individual. To the extent that Vasquez's claim is based on allegations that the Will County Sheriff's Office had a widespread practice of loading warrants with erroneous information into LEADS, this Court agrees with the defendants that there is

not sufficient evidence for a jury to reasonably find that such a practice existed. All Vasquez has cited are errors associated with one LEADS warrant that mistakenly identified him as the suspect. This is not enough to permit a reasonable jury to find an implicit policy under *Monell*. *See Grieveson*, 538 F.3d at 774–75 (holding that four repeat incidents experienced by a single individual did not raise a triable issue of a widespread unconstitutional government practice); *see also Wilson v. Cook County*, 742 F.3d 775, 780 (7th Cir. 2014) ("Although this court has not adopted any bright-line rules for establishing what constitutes a widespread custom or practice, it is clear that a single incident—or even three incidents—do not suffice.").

But Vasquez's theory of liability under *Monell* is broader in scope: he also argues that his injuries resulted from the Will County Sheriff's decision not to implement policies to correct errors and ensure the accuracy of its LEADS warrants.[3] A showing of numerous repetitive injuries is not required for this claim to survive summary judgment. *Glisson*, 849 F.3d at 381; *see also J.K.J.*, 928 F.3d at 596 n.13.

The Seventh Circuit, sitting en banc, recently considered the showing required to establish a governmental entity's policy of inaction as opposed to inadvertence, which would not be actionable under *Monell*. *Glisson*, 849 F.3d at 379–82. Based on the facts in *Glisson*, the court concluded that the absence of a policy, despite seven-year-old state regulations requiring establishment of that policy, amounted to a decision not

---

[3] The defendants argue that Vasquez's *Monell* claim is barred by Illinois's two-year statute of limitations because it is based on a warrant error from 2005. But because Vasquez claims injuries from a policy of inaction on warrant errors that continued into the limitations period, this claim is not time-barred. *See Savory v. Lyons*, 469 F.3d 667, 672–73 (7th Cir. 2006) (explaining that each constitutional violation from an ongoing policy is an injury actionable under section 1983).

6

to adopt a policy, as opposed to inaction via inadvertence. *Id.* at 379–80.

In this case, as in *Glisson*, there are state regulations requiring practices that the defendants did not implement, and Vasquez alleges that this inaction by the defendants caused his Fourth Amendment injuries. The state regulations regarding the LEADS database instruct local law enforcement agencies to act "as soon as possible" to modify or remove incorrect or invalid warrants. 20 Ill. Admin. Code § 1240.60(a)(5). Vasquez's evidence supporting a contention that the defendants consciously failed to implement a policy for reviewing and correcting erroneous warrants, despite this regulatory directive, would permit a reasonable jury to find an unconstitutional government policy.

To succeed on his *Monell* claim, Vasquez must also demonstrate that in choosing not to adopt a warrant review and correction policy, the Will County Sheriff's Office was deliberately indifferent to an obvious risk of constitutional injury. *Glisson*, 849 F.3d at 380–82; *see also J.K.J.*, 928 F.3d at 588. He can prove this by establishing that the Sheriff's Office had actual or constructive knowledge that its policy (or lack thereof) would violate constitutional rights. *Glisson*, 849 F.3d at 381–82; *see also King v. Kramer*, 680 F.3d 1013, 1021 (7th Cir. 2012). The defendants argue that there is no evidence that would permit a reasonable jury to find that they were on notice, prior to November 2016, of the need for a policy addressing warrant errors. In November 2016, the Joliet police informed the Will County Sheriff's Office that they had mistakenly entered Vasquez's social security number into a warrant.

But there is ample evidence in the record that would allow a reasonable jury to find that the defendants had notice—prior to November 2016—of the risk of constitutional injury in the absence of a warrant review and correction policy. The

7

warrants division supervisor in the Will County Sheriff's Office testified that there were "constant" discussions in the Office about the "continual circuit" of Vasquez's arrests on this faulty warrant—events the supervisor characterized as part of a "recurring theme." Rojek Dep., Ex. F. to Defs.' L.R. 56.1 Stmt., dkt. no. 75-7, at 80:4–10, 85:8–21. Despite this "recurring theme" of wrongful arrests, the Office had no policy to address LEADS warrant errors. *Id.* at 55:14–21, 85:16–21. And the LEADS regulations requiring such a policy suggest that the Sheriff's Office had constructive notice of the need for one. *See* 20 Ill. Admin. Code § 1240.60(a)(5). This evidence is sufficient to support a reasonable finding that the Sheriff's Office had notice of the risk of constitutional injury in the absence of a policy for addressing LEADS warrant errors and that its failure to adopt one was a deliberate choice.

The defendants argue that because there is no evidence of widespread inaccuracies in the Office's LEADS warrants, Vasquez cannot establish deliberate indifference to the risk of constitutional injury. But a finding of deliberate indifference in this context does not require any specific quantum of errors. "The key is whether there is a conscious decision not to take action," which "can be proven in a number of ways, including but not limited to repeated actions." *Glisson*, 849 F.3d at 381. A plaintiff can also establish that a governmental entity's lack of policy was a deliberate choice by offering evidence, as Vasquez does here, that the entity had knowledge that without the policy, the constitutional rights of individuals would "sometimes be violated." *Glisson*, 849 F.3d at 382. A reasonable jury could find that the Sheriff's Office was deliberately indifferent to the risk of improper arrests due to LEADS warrant errors.

Finally, the defendants argue that Vasquez's Fourth Amendment *Monell* claim

8

fails because there is no causal connection between any official policy of the Sheriff's Office and Vasquez's March 2017 arrest specifically. To establish the causation element of a *Monell* claim, a plaintiff must demonstrate that the municipality's actions were the "moving force" behind his injuries. *J.K.J.*, 928 F.3d at 588. Preliminarily, the Court observes that Vasquez's Fourth Amendment *Monell* claim is not limited to his March 2017 arrest; he alleges injury from several arrests, and the defendants do not challenge the causation element with respect to any of the others.

Regardless, if a jury were to find that the Sheriff's Office had a policy of inaction on warrant errors, it could reasonably further conclude that this policy directly caused Vasquez's March 2017 arrest. The Sheriff's Office is responsible for editing, deleting, and managing its own LEADS warrants. A reasonable jury could find that a policy or lack of policy governing those warrant management practices would have a direct connection to the persistence of Vasquez's social security number on a Will County LEADS warrant.

For these reasons, the defendants are not entitled to summary judgment on count 1.

**B.     State-law tort claims**

The defendants have also moved for summary judgment on Vasquez's claims for breach of statutory duty (count 3), negligence (count 4), negligent infliction of emotional distress (count 5), and false arrest (count 6). The defendants argue that section 2-107 of the Local Governmental and Governmental Employees Tort Immunity Act grants them absolute immunity from liability for these claims. This section provides:

> A local public entity is not liable for injury caused by any action of its employees that is libelous or slanderous or for the

9

> provision of information either orally, in writing, by computer
> or any other electronic transmission, or in a book or other form
> of library material.

745 Ill. Comp. Stat. 10/2-107.  Section 2-107, on its face, immunizes public entities only from liability in defamation suits, and none of Vasquez's claims from which defendants claim immunity are defamation claims.  *See ATC Healthcare Servs. v. RCM Techs.*, 282 F. Supp. 3d 1043, 1054 (N.D. Ill. 2017); *Chi. United Indus. v. City of Chicago*, No. 05 C 5011, 2006 U.S. Dist. LEXIS 98640, at *21 (N.D. Ill. Dec. 20, 2006).  The defendants have not directed the Court to any authority extending the protections of section 2-107 beyond immunity from defamation suits.  Because this is the only basis on which the defendants have moved for summary judgment on counts 3, 4, 5, and 6, the Court denies the motion with regard to these claims.

## Conclusion

For the foregoing reasons, the Court dismisses counts 7 and 8 with prejudice, grants the defendants' motion for summary judgment on count 2, and otherwise denies the motion [dkt. no. 73].  The Court sets the case for a status hearing on September 11, 2019 at 9:30 a.m. for the purpose of setting a prompt trial date and discussing the possibility of settlement.

						_____
						MATTHEW F. KENNELLY
						United States District Judge

Date:  September 5, 2019